**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PEGGY ANN BROCK HARTZOG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1160 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 10)

will be denied, Plaintiff's Motion for Summary Judgment (Doc. 8) will be granted, and this case

will be remanded for further administrative proceedings.

Plaintiff Peggy Ann Brock Hartzog ("Hartzog") protectively applied for disability

insurance benefits ("DIB") on August 28, 2008, alleging that she became "disabled"

on January 31, 2006. (R. at 9, 100, 141). On May 27, 2009, she protectively applied for

supplemental security income ("SSI") benefits, using the same onset date as reflected in her DIB

application. (R. at 9, 107). Pennsylvania's Bureau of Disability Determination denied the

applications on January 6, 2009. (R. at 68, 74). Hartzog responded on January 13, 2009,

by filing a timely request for an administrative hearing. (R. at 79-80). On June 15, 2010,

a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ")

Guy Koster. (R. at 24). Hartzog, who was represented by counsel, appeared and testified at the

hearing.  (R. at 28-51).  An impartial vocational expert also testified at the hearing.  (R. at 51-54).

Hartzog's alleged onset date was changed to December 8, 2007.  (R. at 26).
The amendment was made to reflect the fact that a prior application filed by Hartzog had been denied on December 7, 2007, and that no basis existed for reopening that determination.  (R. at 9, 26).  In a decision dated October 18, 2010, the ALJ determined that Hartzog was not "disabled" within the meaning of the Social Security Act ("Act").  (R. at 6-22).

On November 2, 2010, Hartzog sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  (R. at 98-99).  The Appeals Council denied the request for review on August 22, 2011, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  (R. at 1).  Hartzog commenced this action on September 12, 2011, seeking judicial review of the Commissioner's decision.  Docs. 1 & 2.  Hartzog and the Commissioner filed motions for summary judgment on March 19, 2012, and April 19, 2012, respectively.  Docs. 8 & 10.  The parties' cross-Motions for Summary Judgment are now ripe for adjudication.

At the second step of the sequential evaluation process, the ALJ determined that Hartzog suffered from the "severe" impairments of fibromyalgia, degenerative disc disease of the cervical spine, lower back pain secondary to sciatica, status post arthroscopic surgery of the left knee, carpal tunnel syndrome of the right hand, abdominal pain and somatoform disorder.  (R. at 11-12).  In light of Hartzog's multiple impairments, the ALJ assessed her residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that balancing, stooping, kneeling, crouching, crawling, and climbing are limited to occasionally with no

climbing of ladders, ropes or scaffolds.  In addition, she is accorded an alternate sit/stand option and should avoid exposure to temperature extremes.  Due to the carpal tunnel syndrome, she should avoid jobs requiring constant repetitive hand movement, such as assembly work or typing.  Due to problems with concentration and handling stress, she is capable of performing . . . simple, routine, repetitive tasks, requiring little independent decision making, with little or no changes in the work setting and only occasional contact with the general public, coworkers, and supervisors.

(R. at 14).  Although these limitations rendered Hartzog incapable of returning to her past relevant work as a janitor, mailer, customer service clerk or sales clerk, the ALJ concluded that she could work as a surveillance system monitor, document preparer or addresser.  (R. at 21-22).  The vocational expert testified that these jobs existed in significant number in the national economy.  (R. at 54).

Hartzog advances two arguments in support of her motion for summary judgment.  First, she contends that the ALJ erred in failing to consider the effect that her migraine headaches had on her ability to work.  Doc. 9 at 6-11.  Second, Hartzog maintains that the ALJ failed to adequately weigh an opinion of disability provided by her primary care physician, Dr. Christopher Rhody.  *Id.* at 12-15.

When Hartzog applied for DIB and SSI benefits, she listed migraine headaches among the impairments limiting her ability to work.  (R. at 147).  She indicated that the migraine headaches caused her to experience eye pain, vomiting and dizzy spells, and that her medications to alleviate those problems either did not work or made her "too tired."  (R. at 150).  In a function report filed in support of her applications, Hartzog stated that she usually had a headache when she woke up.  (R. at 183).

The documentary record contains evidence suggesting that Hartzog suffers from migraine headaches.  Dr. Bruce M. Cotugno, a treating neurologist, reported on May 23, 2006,

that Hartzog had complained of "daily headaches." (R. at 230).[1]  A prescription for Topamax

was provided to relieve her pain. (R. at 231).  On September 8, 2006, Hartzog told Dr. David E.

Seaman, her treating rheumatologist, that she continued to suffer from "chronic recurrent

headaches." (R. at 354).  A magnetic resonance imaging ("MRI") scan conducted on January 24,

2007, revealed that Hartzog had a venous angioma in her brain. (R. at 288).  No other

abnormalities were found. (R. at 288).  Dr. Sunaina Nangia observed on November 21, 2007,

that an over-the-counter version of Excedrin had not alleviated the symptoms caused by

Hartzog's migraine headaches. (R. at 247).  Hartzog sought treatment for her headaches at

Canonsburg General Hospital on April 15, 2008. (R. at 393-395).  Dr. Melvin C. Alberts noted

that Hartzog had complained of daily morning headaches. (R. at 393).  He suspected that she

was suffering from temporomandibular joint disorder ("TMJ"). (R. at 394).  Hartzog apparently

stated that while she had found Topamax to be "very helpful," she could no longer afford it

because her husband had lost his insurance coverage. (R. at 393, 395).  On July 2, 2009, she

complained of a migraine headache radiating throughout her head, eyes and neck. (R. at 562).

At the hearing, Hartzog testified that she suffered from headaches "every morning" even

though she was on medication to alleviate that problem. (R. at 33).  She explained that her

migraine headaches had been diagnosed in 2002. (R. at 45).  Hartzog asserted that the headaches

typically lasted anywhere from 20 minutes to two hours after the provision of medication.

(R. at 49).  She testified that "bad" headaches often forced her to place herself in an environment

with no lights or sound. (R. at 50).

---

[1] The Commissioner argues that evidence predating Hartzog's amended onset date is irrelevant to
her present applications for DIB and SSI benefits.  *See* Doc. 11 at 4-5.  That contention is
unavailing.  To the extent that prior evidence of Hartzog's impairments is probative of her
medical condition during the relevant period of time, it is relevant to the issues in this case.
*Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-82 (Fed. Cir. 2009).

The Commissioner must give "serious consideration" to a claimant's subjective complaints of disabling pain whenever the record contains objective evidence of an impairment that could reasonably be expected to cause such pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). The existing record contains not only evidence of an impairment that could reasonably be expected to cause pain, but also documentary evidence of the pain itself. (R. at 230-231, 247, 288, 393-395, 562). Under these circumstances, the ALJ was not free to disregard Hartzog's subjective complaints without relying on contrary medical evidence. *Mason*, 994 F.2d at 1067-1068.

The ALJ referenced Hartzog's testimony about migraine headaches in the portion of his decision discussing her residual functional capacity. (R. at 15-20). Nevertheless, he did not explain whether or why he found her testimony to be lacking in credibility. Migraine headaches were not listed among the "severe" impairments identified at the second step of the sequential evaluation process. (R. at 11-12). The severity threshold at the second step is relatively easy for a claimant to surmount. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004). Under the Commissioner's regulations, even limitations resulting from "non-severe" impairments must be factored into the assessment of a claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Where the limitations resulting from such an impairment are properly accounted for, an administrative law judge's failure to characterize that impairment as "severe" may be regarded as a harmless error. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, however, the Court cannot determine whether the ALJ properly factored the effects of Hartzog's migraine headaches into the residual functional capacity calculus. Although some limitations were directly tied to Hartzog's "problems with concentration and handling stress," it is not clear whether those

symptoms were attributable to her migraine headaches.  (R. at 14).  If they were, it is difficult to
fathom how the ALJ could have found the migraine headaches to be "non-severe."  *Markle v.
Barnhart*, 324 F.3d 182, 187-188 (3d Cir. 2003) (equating a finding of "severity" with the
second criterion of Listing 12.05C, which refers to an impairment "imposing an additional and
significant work-related limitation of function").  Given the documentation of Hartzog's
migraine headaches throughout her treatment records and her consistent testimony about those
headaches at the hearing, the evidence relating to the headaches cannot be reasonably
characterized as so lacking in probative value that the ALJ was free to implicitly reject it without
explanation.  *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).
Because the ALJ failed to describe the work-related limitations resulting from Hartzog's
migraine headaches, his decision cannot stand.  *Diaz v. Commissioner of Social Security*, 577
F.3d 500, 504-506 (3d Cir. 2009).

Turning to Hartzog's arguments regarding treating source Dr. Rhody, said physician
detailed Hartzog's physical limitations in a report dated June 10, 2010.  (R. at 530-532).
Dr. Rhody indicated that Hartzog could stand or walk for only two hours, and sit for less than
one hour, during the course of an eight-hour workday.  (R. at 530).  Dr. Rhody reported that
Hartzog could lift no more than ten pounds, that she could not repetitively use her hands for
simple grasping, and that she could never bend, squat, crawl or climb.  (R. at 530-531).
He predicted that she would be unable to function at the level typically expected of a full-time
employee, and that her impairments would cause her to miss work in excess of fifteen times per
month.  (R. at 531).  At the hearing, the vocational expert testified that no work existed in
significant numbers in the national economy for an individual whose impairments would
necessitate more than two absences per month.  (R. at 54).

The ALJ rejected Dr. Rhody's findings as "[in]consistent with the record as a whole." (R. at 20).  He also cited the opinions of non-examining medical consultant Dr. Abu N. Ali, who found Hartzog physically capable of engaging in an unlimited range of "light" work activities.  (R. at 520-526).  The ALJ relied on Dr. Ali's assessment in determining that Hartzog had the residual functional capacity to engage in a limited range of "sedentary" work activities. (R. at 20).

The opinion of a non-examining medical consultant is ordinarily insufficient to overcome a contrary opinion provided by a treating physician.  *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).  In this case, however, the ALJ buttressed his residual functional capacity finding with the opinions of two treating physicians.  (R. at 20). Hartzog underwent stomach surgery in 2003 to reverse an earlier gastric bypass procedure. (R. at 42).  During a follow-up examination conducted five years later, Dr. Miles Lance Weaver indicated that Hartzog had no restrictions.  (R. at 263).  After examining Hartzog on August 21, 2008, Dr. Seaman observed that "[t]here [wa]s no objective evidence to support total or permanent disability from a rheumatologic standpoint."  (R. at 353).  The ALJ referenced the opinions of Drs. Weaver and Seaman in the portion of his decision discussing the various medical opinions contained in the record.  (R. at 20).

Because the record does not necessarily point in favor of a finding that Hartzog is disabled, the proper remedy in this case is a remand for further proceedings rather than an immediate award of benefits.  *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). Hartzog faults the ALJ for failing to adequately explain the weight accorded to Dr. Rhody's opinion.  Doc. 9 at 12-15.  Since a remand is required for other reasons, the Court has no occasion to consider the weight that should be afforded to the various medical opinions

contained in the record.  It suffices to say that Hartzog must be given "an opportunity to be heard" on remand.  *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 800 (3d Cir. 2010).  She can advance her argument concerning the probative value of Dr. Rhody's assessment during the course of the further administrative proceedings.

Neither Hartzog's testimony nor Dr. Rhody's assessment is entitled to unqualified acceptance.  *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 362-363 (3d Cir. 2011); *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011).  Nonetheless, the Commissioner must rely on competent medical evidence in determining Hartzog's work-related abilities and limitations.  *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986).  Dr. Weaver's statement suggesting that Hartzog was under no restrictions, did not necessarily speak to her ability to work.  (R. at 263).  Instead, it may have simply reflected her ability to engage in certain activities of daily living that had previously been restricted because of her stomach surgery.  Furthermore, Dr. Seaman's observation that "no objective evidence" of "total or permanent disability" could be gleaned from Hartzog's rheumatologic impairments did not shed light on the degree to which her ability to work was limited by distinct impairments.  (R. at 353).  The Commissioner must consider all relevant evidence through the proper prism of Hartzog's ability (or inability) to engage in specific work-related activities.  In so doing, he must properly consider and account for any limitations resulting from her migraine headaches, including limitations caused by side effects to medications provided to alleviate symptoms associated with those headaches.  *Green v. Schweiker*, 749 F.2d 1066, 1068-1071 (3d Cir. 1984).

For the reasons stated above, the Court hereby enters the following:

## II.  <u>ORDER</u>

Defendant's Motion for Summary Judgment (**Doc. 10**) is **DENIED**, Plaintiff's Motion for Summary Judgment (**Doc. 8**) is **GRANTED,** and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with the analyses in the above Memorandum.

IT IS SO ORDERED.


July 27, 2012                                      s\Cathy Bissoon_____
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record